Case 1:16-cv-00036 Document 14 Filed in TXSD on 02/01/17 Page 1 of 11

United States District Court
Southern District of Texas
**ENTERED**
February 01, 2017
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| **OSCAR J. AGUILAR,** | § | |
| Petitioner, | § | |
| | § | |
| v. | § | **Civil Action No. 1:16-36** |
| | § | **Criminal No. B:13-830-1** |
| **UNITED STATES OF AMERICA,** | § | |
| Respondent. | § | |

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

On February 12, 2016, Petitioner Oscar J. Aguilar filed a Motion to Vacate, Set Aside, or Correct his Sentence pursuant to 28 U.S.C. § 2255. Dkt. No. 1. On April 25, 2016, the Government filed a motion to dismiss the petition. Dkt. No. 7.

After reviewing the record and the relevant case law, it is recommended that the petition be denied. Aguilar's claim is belied by the record and is otherwise meritless.

### I. Background

**A. Factual Background**

On October 22, 2013, a federal grand jury – sitting in Brownsville, Texas, – indicted Aguilar and nine co-defendants in a 21-count indictment. U.S. v. Aguilar, Criminal No. 1:13-830-1, Dkt. No. 1 (hereinafter "CR"). Aguilar was indicted for one count of conspiracy to run an unlicensed money transmitting business, in violation of 18 U.S.C. § 1960; one count of running an unlicensed money transmitting business, in violation of 18 U.S.C. § 1960; eighteen counts of structuring transactions to evade financial reporting requirements, in violation of 31 U.S.C. § 5324(a)(3) and (d); and, one count of conspiracy to commit international money laundering, in violation of 18 U.S.C. § 1956(h). Id. The indictment revolved around a scheme in which narcotics proceeds, earned in Florida, would be deposited into the accounts of persons living in Brownsville, Texas, who would later withdraw the money and turn it over to persons living in Mexico. Id.

On December 5, 2012, Aguilar was interviewed by Homeland Security Investigation ("HSI") agents, regarding his alleged laundering of drug proceeds. Cr. Dkt. No. 309, p. 12. Later, on January 15, 2014, Aguilar entered into a proffer agreement with the Government. Dkt. No. 2-1. The proffer agreement stated that "no statements or other information provided by [Aguilar] during the proffer will be used directly against [Aguilar] in any criminal case, including sentencing in [Aguilar's] case, except as outlined in Sentencing Guidelines § 1B1.8(b)." Id, p. 2. Under that particular portion of the Guidelines, the Court generally may not use information gathered from a proffer agreement in formulating a guideline sentence. As relevant here, there is an exception for using information that was "known to the government prior to entering into the cooperation agreement." U.S.S.G. § 1B1.8(b)(1). In other words, the information proffered to the Government can still be used in calculating a Guideline sentencing range, if that information was previously known to the Government, or otherwise obtained independent of the proffer.

### B. Rearraignment

On May 16, 2014, Aguilar appeared before the Magistrate Judge and entered a guilty plea – without a written plea agreement – to count 21 in the indictment, which charged him with conspiracy to commit international money laundering. CR Dkt. No. 263.

On May 19, 2014, the Magistrate Judge issued a report and recommendation that the District Judge accept Aguilar's plea of guilty. Id.

### C. Sentencing & Direct Appeal

In the final presentence report ("PSR"), Aguilar was assessed a base offense level of 24. CR Dkt. No. 309, pp. 20-21. This level was predicated upon on a relevant conduct finding that Aguilar laundered $1,893,170.00. Id. Aguilar was assessed an additional six-level enhancement because he "knew or believed that any of the laundered funds were the proceeds of, or were intended to promote an offense involving the manufacture, importation, or distribution of a controlled substance." Id. Aguilar was also assessed an additional four-level enhancement, because he was in the business of laundering funds. Id, pp. 20-21. Both the six-level and four-level enhancements were based upon information provided by Aguilar

2

during his December 2012 interview by HSI agents.[1] Id. Finally, Aguilar received a three-level reduction for acceptance of responsibility. Id. Thus, Aguilar was assessed a total offense level of 35.

Regarding his criminal history, Aguilar had no adult criminal convictions and was assessed zero criminal history points, resulting in a criminal history category of I. CR Dkt. No. 309, p. 22. Based upon Aguilar's offense level of 35 and criminal history category of I, the presentence report identified a guideline sentencing range of 168 to 210 months of imprisonment. Id., p. 26.

Aguilar, through counsel, filed objections to the PSR. CR Dkt. No. 305. He objected to the six-level increase – for knowingly laundering drug proceeds – on the grounds that there was "insufficient evidence" that Aguilar knew that the funds were drug-related. Id. He also objected to the four-level increase – for being in the business of laundering funds – arguing that there was insufficient evidence to support that enhancement. Id.

On December 12, 2014, the District Judge adopted the report and recommendation, accepting Aguilar's guilty plea. CR Dkt. No. 348.

On January 27, 2015, the District Court held the sentencing hearing. CR Dkt. No. 370. At the sentencing hearing, Aguilar's counsel withdrew the objection as to the six-level increase for knowingly laundering drug money. Id, p. 2. The Court overruled Aguilar's objection to the four-level increase, concluding that Aguilar was in the business of laundering drug money. Id, p. 4.

The District Judge sentenced Aguilar to 168 months of imprisonment; three years of supervised release; and a $100 special assessment fee. CR Dkt. No. 370, pp. 6-8. The judgment was entered on February 10, 2015. CR Dkt. No. 353.

Neither the District Court docket, nor the Fifth Circuit docket, reflect the filing of a direct appeal. A notice of appeal must be filed within fourteen (14) days from the entry of judgment. See FED. R. APP. P. 4(b)(1)(A), 26(a)(2). Therefore, Aguilar's deadline for filing a notice of direct appeal passed on February 24, 2015. Id.

---

[1] As pointed out earlier, that interview occurred more than a year prior to January 2014, when Aguilar entered into the proffer agreement with the Government. Dkt. No. 2-1.

**D. Motion to Vacate, Set Aside or Correct Sentence Pursuant to § 2255**

On February 12, 2016, Aguilar timely filed a petition pursuant to 28 U.S.C. § 2255. Dkt. No. 1.  In that petition, Aguilar raises a single issue.  He alleges that his counsel was ineffective for failing to object to the PSR's use of statements that Aguilar made in the proffer sessions, in violation of U.S.S.G. 1B1.8(a).

On April 25, 2016, the Government filed a motion to dismiss, asserting that the information used in the PSR was based on information already known to the Government at the time of the proffer agreement. Dkt. No. 7.

On January 5, 2017, the Court issued an order for the Government to file a supplemental response, outlining "whether there was an oral proffer agreement between Aguilar and Homeland Security agents that would prevent any information in the December 2012 interview from being used against him." Dkt. No. 9.

On January 25, 2017, the Government filed its supplemental response. Dkt. No. 13-1. The Government submitted a copy of the statement of rights that was given to Aguilar and which Aguilar signed. Dkt. No. 13-1.  On that statement of rights, it stated that "anything you say can be used against you in court, or other proceedings." Id.[2]

**II. Applicable Law**

**A. Section 2255**

Aguilar seeks relief pursuant to 28 U.S.C. § 2255. Dkt. No. 1.  That section provides, as relevant here:

> (a) A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a).

---

[2] This statement of rights establishes that there was no proffer agreement between the Government and Aguilar at the December 2012 meeting.  Thus, any statements from this meeting could be used against Aguilar in the PSR.

"Section 2255 provides the primary means of collaterally attacking a federal sentence, and is the appropriate remedy for errors that occurred at or prior to the sentencing." Logan v. Warden Fed. Corr. Complex Beaumont, 644 F. App'x 280 (5th Cir. 2016) (quoting Padilla v. U.S., 416 F.3d 424, 425 (5th Cir. 2005)). A petitioner who seeks to challenge a final conviction by collateral attack, can do so on constitutional or jurisdictional grounds. 28 U.S.C. § 2255(a); U.S. v. Shaid, 937 F.2d 228, 233 (5th Cir. 1991).

### B. Ineffective Assistance of Counsel

An ineffective assistance of counsel claim brought under § 2255 is subject to the two-prong analysis articulated in Strickland v. Washington, 466 U.S. 668 (1984). U.S. v. Grammas, 376 F.3d 433, 436 (5th Cir. 2004). To establish ineffective assistance, the petitioner must show: (1) that defense counsel's performance was deficient; and, (2) that the deficient performance prejudiced the defendant. Id. To prove that counsel's performance was deficient, a petitioner must show that "it fell below an objective standard of reasonableness." U.S. v. Juarez, 672 F.3d 381, 385 (5th Cir. 2012). Courts will not "audit decisions that are within the bounds of professional prudence." U.S. v. Molina-Uribe, 429 F.3d 514, 518 (5th Cir. 2005).

Prejudice is established by proving "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "Failure to prove either prong will defeat an ineffective assistance claim." Leal v. Dretke, 428 F.3d 543, 548 (5th Cir. 2005).

A defendant is "entitled to effective assistance of counsel at all stages of his criminal trial, including the sentencing phase." Ransom v. Johnson, 126 F.3d 716, 721 (5th Cir. 1997). A defendant may show prejudice at sentencing if counsel's ineffective assistance resulted in any additional incarceration. Glover v. U.S., 531 U.S. 198, 203 (2001) (noting that "any amount of jail time has Sixth Amendment significance.").

**III. Analysis**

A court may entertain and decide a § 2255 motion without requiring the production of the prisoner at a hearing. 28 U.S.C. § 2255. Further, a district court may deny a § 2255 motion without an evidentiary hearing "only if the motion, files, and records of the case conclusively show the prisoner is entitled to no relief." U.S. v. Bartholomew, 974 F.2d 39, 41 (5th Cir. 1992). The record in this case satisfies this requirement, for which reason the motion can be decided without a hearing.

In analyzing Aguilar's claim, the Court is required to construe allegations by pro se litigants liberally, to ensure that their claims are given fair and meaningful consideration, despite their unfamiliarity with the law. Haines v. Kerner, 404 U.S. 519, 520 (1972). "While we read pro se complaints liberally, pro se litigants must still comply with the law and procedural rules." Washington v. E. Baton Rouge Par. Sch. Sys., 471 F. App'x 306 (5th Cir. 2012). Regardless of the standard applied in this case, neither the record – nor the law – support Aguilar's claim.

**A. Limitations Regarding Proffered Information**

Aguilar asserts that information that he provided to the Government as part of his proffer agreement was used against him in determining his sentence. The Sentencing Guideline's general rule provides:

> [w]here a defendant agrees to cooperate with the government by providing information concerning unlawful activities of others, and as part of that cooperation agreement the government agrees that self-incriminating information provided pursuant to the agreement will not be used against the defendant, then such information shall not be used in determining the applicable guideline range, except to the extent provided in the agreement.

U.S.S.G. § 1B1.8(a).

There are exceptions to this rule. For example, this limitation does not apply to information that was known to the Government prior to entering into the proffer agreement. U.S.S.G. § 1B1.8(b)(1). Furthermore, this limitation does not apply if the Government obtained information from other independent sources that duplicated what was discussed in

6

the proffer sessions. U.S. v. Charon, 442 F.3d 881, 890 (5th Cir. 2006). With these rules in mind, the Court turns to the facts of this case.

### B. Application to Facts

As noted earlier, Aguilar was assessed two separate sentencing enhancements: a six-level enhancement for knowingly laundering drug proceeds; and a four-level enhancement for being in the business of laundering money. Each are considered in turn.

#### 1. Knowingly Laundering Drug Proceeds

Aguilar was assessed a six-level enhancement because he "knew or believed that any of the laundered funds were the proceeds of, or were intended to promote . . . an offense involving the manufacture, importation, or distribution of a controlled substance or a listed chemical." U.S.S.G. § 2S1.1(b)(1).

The proffer agreement does not insulate Aguilar as to the substance of what he said during the proffer. Rather, as the exceptions allow, if there is independent evidence in the record – which duplicates the information that Aguilar gave during the proffer interview – the sentence may still be enhanced based upon the independent information. The Government may "meet its burden of proof at sentencing with sufficient, reliable evidence derived from a legitimate source wholly independent of [the defendant's] immunized statements." U.S. v. Harper, 643 F.3d 135, 141 (5th Cir. 2011).

In support of the factual basis for this enhancement, the PSR noted that Aguilar was interviewed by HSI agents on December 5, 2012. CR Dkt. No. 309, p. 12. During that interview, Aguilar – who did vehicle stereo installation work – stated that he had done a "custom installation" on a van owned by a "high-ranking member of the Gulf Cartel." Id. According to Aguilar, another member of the Gulf Cartel informed Aguilar that he "needed to do something for 'the boss' if he wanted to be paid for his work." Id. According to Aguilar, he refused to smuggle narcotics, but instead agreed to "open a bank account at the Bank of America which would receive cash deposits." Id. Aguilar and his wife would receive the deposits and turn them over to Gulf Cartel members. Id.

This interview predated the proffer by more than a year. Compare CR Dkt. No. 309,

p. 12; and Dkt No. 2-1, p. 2. Thus, all of the information from the 2012 interview was already known to the Government when it entered into the proffer agreement in 2014. As such, the information could be used to enhance Aguilar's sentence. U.S.S.G. § 1B1.8(b)(1).

Moreover, the Government bears the burden of proving, by a preponderance of the evidence, "that the facts support a sentencing enhancement." U.S. v. Conner, 537 F.3d 480, 492 (5th Cir. 2008). In the instant case, the facts from the December 2012 interview meet this requirement.

During the December interview, Aguilar explained how the money would be deposited into local accounts and then transferred to the Gulf Cartel. CR Dkt. No. 309, p. 12. It is well known that the Gulf Cartel is a "drug trafficking organization" that "moves large quantities of cocaine and marijuana across the Mexican border into the United States." U.S. v. Castillo-Chavez, 555 F. App'x 389, 393 (5th Cir. 2014). Thus, the December 2012 interview shows, by a preponderance of the evidence, that Aguilar knew or believed that he was handling drug-related money. See U.S. v. Myers, 772 F.3d 213, 220 (5th Cir. 2014) (Preponderance of the evidence only requires that the facts – and any reasonable inferences taken from those facts – establish that it is "more likely than not" that the enhancement is appropriate).

Because the information was known to the Government at the time of the proffer agreement, Aguilar's counsel was not ineffective for withdrawing his objection to this sentencing enhancement. See Koch v. Puckett, 907 F.2d 524, 527 (5th Cir.1990) ("counsel is not required to make futile motions or objections."). This claim is meritless and should be denied.

### 2. Business of Laundering Funds

Aguilar was also assessed a four-level enhancement, because he was "in the business of laundering funds." At the outset, it is important to note that, being "in the business of laundering funds," does not mean that the defendant was not engaged in other businesses or that laundering money was his sole source of support. The sentencing guidelines identify a non-exhaustive list of factors to determine if the defendant was in the business of laundering

8

funds: (1) how regularly he engaged in it; (2) the length of time that he engaged in the laundering; (3) if he laundered the money for/from multiple sources; (4) the revenue he received from laundering; (5) prior history of laundering money; and, (6) if the defendant ever admitted to a confidential informant that he engaged in money laundering. Application Note 4(B) to U.S.S.G. § 2S1.1(b)(2)(C).

In support of this enhancement, the PSR again pointed to the December 5, 2012, interview. CR Dkt. No. 309, p. 21. During that interview, Aguilar admitted that "he had at least four (4) people working for him, funneling money from Florida to Texas." Id. In that same interview, Aguilar admitted that he had been laundering money since 2010 and that he was often paid between $100 and $250 for each transaction. Id, p. 12. Additionally, information about the extent of the money laundering came from bank records and testimony from co-conspirators, showing that Aguilar helped launder more than 1.8 million dollars in drug proceeds over a two year period. Id, pp. 9-19. As previously noted, information from independent sources can be used to enhance a sentence, even if that information is duplicative of information that the defendant supplied in the proffer interviews. Charon, 442 F.3d at 890. When considered as a whole, this information clearly establishes that it was more likely than not, that Aguilar was in the business of money laundering. Myers, 772 F.3d at 220.

Moreover, the four-level enhancement was supported by factual information from sources other than Aguilar's proffer sessions. Accordingly, Aguilar's counsel was not ineffective for failing to object to this enhancement. Koch, 907 F.2d at 527. For all of these reasons, this claim is meritless and should be denied.

## IV. Recommendation

WHEREFORE it is **RECOMMENDED** that the Petitioner Oscar J. Aguilar's Motion to Vacate, Set Aside or Correct his Sentence pursuant to 28 U.S.C. § 2255, Dkt. No. 1, be **DENIED** as meritless.

### A. Certificate of Appealability

Unless a circuit justice or judge issues a Certificate of Appealability ("COA"), a petitioner may not appeal the denial of a § 2255 motion to the Fifth Circuit. 28 U.S.C. § 2253(a),(c)(1). A petitioner may receive a COA only if he makes a "substantial showing of the denial of a constitutional right." § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 336 (2003). To satisfy this standard, a petitioner must demonstrate that jurists of reason could disagree with the court's resolution of his constitutional claims or that jurists could conclude that the issues presented are adequate to deserve encouragement to proceed further. Id. at 327; Moreno v. Dretke, 450 F.3d 158, 163 (5th Cir. 2006). A district court may sua sponte rule on a COA because the court that denies relief to a petitioner is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before the court. Alexander v. Johnson, 211 F.3d 895, 898 (5th Cir. 2000).

After reviewing Aguilar's § 2255 motion and the applicable Fifth Circuit precedent, the Court is confident that no outstanding issue would be debatable among jurists of reason. Although Aguilar's § 2255 motion raises issues that the Court has carefully considered, he fails to make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Accordingly, it is **RECOMMENDED** that a COA should be denied.

### B. Notice to Parties

The parties have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable Andrew S. Hanen, United States District Judge. 28 U.S.C. § 636(b)(1) (eff. Dec. 1, 2009). Failure to timely file objections shall bar the parties from a de novo determination by the District Judge of an issue covered in the report and shall bar the parties from attacking on appeal factual findings accepted or adopted by the district court, except upon grounds of

plain error or manifest injustice. See § 636(b)(1); Thomas v. Arn, 474 U.S. 140, 149 (1985); Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1428-29 (5th Cir. 1996), superseded by statute on other grounds, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

DONE at Brownsville, Texas, on February 1, 2017.

_____
Ronald G. Morgan
United States Magistrate Judge